USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/30/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
 :
JOSEPH RIGANO, :
 :       07 Civ. 10282 (WHP)
            Plaintiff, :
 :       MEMORANDUM & ORDER
         -against- :
 :
MICHAEL J. ASTRUE, :
COMMISSIONER OF SOCIAL SECURITY, :
 :
            Defendant. :
 :
------------------------------------X

WILLIAM H. PAULEY III, District Judge:

    Plaintiff Joseph Rigano ("Rigano") brings this action under the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. On September 13, 2010, Magistrate Judge Henry B. Pitman issued a report and recommendation (the "Report") recommending that this Court grant the Commissioner's motion for judgment on the pleadings. For the following reasons, this Court concludes that Rigano's objections lack merit and adopts Magistrate Judge Pitman's thorough and well-reasoned Report in full.

1

BACKGROUND

The underlying facts are painstakingly recounted in the Report and are not repeated here. (See Rigano v. Astrue, 07 Civ. 10282 (WHP) (HBP), ECF No. 14.) On September 27, 2010, Rigano filed objections to the Report, asserting that Administrative Law Judge Katherine Edgell's (the "ALJ") determination was not supported by substantial evidence. First, Rigano argues that "controlling weight" should have been afforded to his treating physician's opinion. Second, Rigano maintains that the opinion of a consultative doctor was too vague to be considered by the ALJ.

On December 24, 2004, Rigano was involved in a car accident, which caused an "ache" or "stabbing" feeling in his neck and back with numbness radiating down to his shoulders and arms. (Report at 7.) In May 2005, Rigano was diagnosed with cervical radiculopathy with a herniated cervical disc. (Report at 15.) In June 2005, Rigano underwent surgery to alleviate this condition. (Report at 16.) Thereafter, although Rigano was unable to sit, stand or walk for long periods, and had limited flexibility, he took his children to school, grocery shopped, and managed his personal needs. (Report at 7-8.) Additionally, Rigano's surgeon reported that Riagano's condition improved. (Report at 16-17.)

Dr. Richard Radna ("Dr. Radna") first saw Rigano in September 2005, and monthly thereafter until January 2007. (Report at 18, 25.) Dr. Radna diagnosed Rigano with "a causally-related cervical and lumbo-sacral, musculo-skeletal and radicular pain syndrome." (Report at 20.) He recommended further surgery, physical therapy, additional MRIs and X-rays, and prescribed medication. (Report at 20-21.)

2

In May 2006, Dr. Radna performed surgery consisting of a "decompressive laminectomy/facetectomy between C3 and C7 and extension to full laminectomy at C4, C5 and C6." (Report at 22.) Following the surgery, Dr. Radna noted that Rigano had decreased radicular pain but he still experienced "severe and constant pain including headaches and pain in the cervical lumbosacral regions." Dr. Radna opined that this pain could not be eliminated entirely without "unacceptable side effects." (Report at 25, 26.) Dr. Radna also noted that Rigano had a limited range of motion and abnormal gait. (Report at 26.)

Dr. Radna concluded "that in an eight-hour day [Rigano] could sit for less than two hours and stand or walk for less than zero to one hours." (Report at 26.) He noted that Rigano should avoid sitting, standing or walking continuously in a work setting. (Report at 26-27.) According to Dr. Radna, Rigano's condition would interfere with his ability to do sedentary work. (See Report at 27-28.)

Following Dr. Radna's surgery, Rigano saw Dr. Frank Maselli ("Dr. Maselli") with complaints of nausea and dizziness brought on by pain medication. (Report at 29.) Dr. Maselli's neurological exam of Rigano was normal. (Report at 29.) And Rigano told Dr. Maselli that he rarely needed to stop his activities. (Report at 30.)

On July 25, 2006, Dr. Thomas Li ("Dr. Li") saw Rigano for a consultative orthopedic examination. (Report at 32.) Dr. Li determined Rigano "could lift and carry generally and that he could shower, dress himself and watch television." (Report at 34.) Rigano told Dr. Li he was limited in other activities such as cooking, cleaning, doing laundry and shopping for food. (Report at 33.) He stated he had tightness in his back when squatting and was limited in his ability to walk on his heels and toes. (Report at 34.) Rigano also reported a

3

limited range of motion in his cervical spine. (Report at 34.) However, Rigano changed his clothes for the exam, got on and off the examination table, and rose from a chair without help. (Report at 34.) Dr. Li determined that Rigano's station and gait were normal and he was not in acute distress. (Report at 34.) In his upper extremities, Dr. Li found that Rigano was ambidextrous and had full range of motion in his shoulders, elbows, forearms and wrists. Additionally, his hand and finger dexterity were intact with full grip strength on each side. (Report at 34.) Finally, Dr. Li noted that Rigano had full strength in his proximal and distal muscles without muscle atrophy or sensory abnormality. (Report at 34-35.)

Dr. Li diagnosed Rigano with "discogenic disease of the cervical spine [and] degenerative changes of the lumbosacral spine" (Report at 35) and indicated there were "limitations on range of motion of the neck and limitations on prolonged standing, repetitive climbing, bending, squatting, heavy lifting and carrying." (Report at 35-36.)

On February 16, 2007, Rigano testified that he suffered from persistent pain following each of his two back surgeries and was still experiencing pain and numbness in his legs and hands. (Report at 42-43.) Rigano described his "typical day" as waking up at 6:30 a.m, making coffee, walking one his children to school, attending swim therapy for forty-five to ninety minutes, and occasionally picking up his child from school. (Report at 43-44.) The reminder of his time he characterized as "loung[ing] around the house" which includes watching TV, reading to his children, dressing himself, and surfing the internet. (Report at 44.) He estimated he could sit for only an hour-and-a-half on a good day but would have to move around every fifteen minutes on bad days. (Report at 44.)

Following the automobile accident, Rigano testified that he worked at a small bar that he owned until it ceased operations in January 2006. (Report at 6.) While most of his work was administrative and performed at home, Rigano testified that he traveled for several hours a week to "survey the inventory and place orders." (Report at 6-7.) While Rigano maintains that he did not participate in family activities outside the home, he acknowledges taking a nine-day vacation at Disney World and using a scooter to navigate the park. (Report at 44.)

## DISCUSSION

I. Applicable Law

A person is "disabled" within the meaning of the Social Security Act if they establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 45 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 45 U.S.C. § 423(d)(2)(A).

A five-step inquiry is required to evaluate disability claims. 20 C.F.R. §§ 404.1520 and 416.920.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in

5

> Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity ("RFC") to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Tavarez v. Barnhart, No. 05 Civ. 2747 (DLC), 2006 WL 997701, at *3 (S.D.N.Y. Apr. 17, 2006) (quoting Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999)) (citation omitted). The burden of demonstrating the first four steps is on the claimant. At the fifth step that burden shifts to the Commissioner. Dragert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002).

II. The ALJ's Decision

At Step One, the ALJ found that Rigano had not engaged in substantial gainful activity since the alleged date of his disability. (Report at 53.)

At Step Two, the ALJ found that Rigano had "severe impairments of degenerative disc disease of the cervical and lumbosacral spine, 'status-post two cervical laminectomies,' and hypertension." (Report at 53-54.)

At Step Three, the ALJ found that Rigano's impairments did not meet or equal any of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Report at 54.)

At Step Four, the ALJ concluded that Rigano had a sedentary residual functional capacity ("RFC") and could perform a range of sedentary work. (Report at 54.) In assessing his RFC, the ALJ noted that Rigano had the option to "alter his sitting/standing position when

6

necessary," lift or carry objects weighing less than ten pounds, stand or walk for up to two hours in an eight hour day, and sit for a total of six hours in thirty minute intervals during an eight hour workday. The ALJ noted that this assessment was consistent with Dr. Li's findings that Rigano had normal station and gait, full range of bilateral motion, and his sensory and reflex functions were intact. (Report at 55.)

The ALJ found that Rigano's reported symptoms were consistent with the objective evidence, but his claims regarding their intensity, persistence and limiting effects were not entirely credible. (Report at 55.) The ALJ based this conclusion, in part, on Rigano's concession that over-the-counter pain relievers and muscle relaxants were sufficient to alleviate his condition. While the ALJ considered Dr. Radna's opinion, he declined to give it controlling weight because it conflicted both with Dr. Li's assessment and Rigano's testimony regarding his daily activities. (Report at 56.)

The ALJ determined that Rigano was capable of performing work as a bar owner. Importantly, the ALJ noted that Rigano had actually performed such work for up to ten hours each week. This work was gainful employment because Rignao earned approximately $13,000 per year working in this capacity. (Report at 56.)

Accordingly, the ALJ determined Rigano was not disabled from May 30, 2005 through the date of the decision and accordingly did not proceed to Step Five.

III. Standard of Review

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1). This Court reviews de novo

those parts of the Report to which objections are made, and reviews the remainder for clear error on the face of the record. 28 U.S.C. § 636(b)(1); Guzman v. Comm'n of Soc. Sec., No. 05 Civ. 6086 (WHP), 2008 WL 1318920, at *2 (S.D.N.Y. Apr. 9, 2008).

A Commissioner's determination that a claimant is not disabled may only be set aside "if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

IV. Analysis

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . ." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). However, if a treating physician's opinions are contradicted by other substantial evidence in the record "they need not be given controlling weight." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (internal citations omitted).

Where substantial evidence contravenes the treating physician's opinion, an ALJ "must consider various 'factors' to determine how much weight to give to the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).

> Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the

8

>   consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

Halloran, 362 F.3d at 32. "'[G]ood reasons' must be given for declining to afford a treating physician's opinion controlling weight." Rivera v. Comm'r of Soc. Sec., 728 F. Supp. 2d 297, 321 (S.D.N.Y. 2010) (quoting 20 C.F.R. § 404.1527(d)(2)).

       Both Dr. Li's assessment and Rigano's testimony indicate that Rigano is capable of sedentary work. Dr. Li's examination revealed Rigano's finger and hand dexterity were intact, and he had full range of motion in shoulders, elbows, forearms and wrists. He also had full range of motion in his hips, knees and ankles, without muscle atrophy, effusion, inflammation or instability in his joints. And despite comments indicating tightness in his lower back and difficulty bending, Rigano changed his clothes and got on and off Dr. Li's examination table without assistance. Rigano's own statements also make clear that he is able to drive, do light grocery shopping, go on occasional trips with his children and use a computer. Further, Rigano performed administrative work as a bar owner. Rigano's testimony and Dr. Li's examination are "good reasons" for not affording Dr. Radna's opinion controlling weight. See Rivera, 728 F. Supp. 2d at 327-28 ("[T]he ALJ validly rejected [treating] physicians' opinions because they conflicted with plaintiff's admitted daily activities and other evidence in the record . . . .") (citing 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i)). Accordingly, the ALJ's decision to not award Dr. Radna's opinion controlling weight was not erroneous.

       Citing O'Brien v. Barnhart, No. 01 Civ. 2483 (RWS), 2002 WL 449860 (S.D.N.Y. Mar. 22, 2002), Rigano argues that Dr. Li's statement that Rigano has "limitations on

prolonged standing, repetitive climbing, bending, squatting, heavy lifting and carrying," is too vague to support a finding of sedentary RFC. However, O'Brien is distinguishable from this case in two important respects. First, in this case, the ALJ's decision was at Step Four, while in O'Brien the ALJ's decision was at Step Five—when the burden shifts to the Commissioner. Compare O'Brien, 2002 WL 449860, at *4, with Barnhart, 311 F.3d at 472. Second, in O'Brien, the ALJ relied on the statement of a doctor who did not examine the claimant after a recent operation. See O'Brien, 2002 WL 449860, at *4. In contrast, Dr. Li examined Rigano after his most recent surgical procedure. And here, there was significantly more evidence before the ALJ including objective results reported by Dr. Li, conclusions of Dr. Maselli, certain observations of Dr. Radna and, notably, Rigano's admission that he was able to perform sedentary work as the owner of his bar.

      Accordingly, the ALJ had substantial evidence to conclude that Rigano has a sedentary residual functional capacity. This Court has reviewed the remainder of the Report and finds it is not facially erroneous.

## CONCLUSION

For the foregoing reasons, this Court adopts the Report and Recommendation of Magistrate Judge Henry B. Pitman in full. The Defendant's motion for judgment on the pleadings is granted. The Clerk of the Court is directed to terminate all pending motions and mark this case closed.

Dated: March 30, 2011
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Charles E. Binder
Binder and Binder P.C.
60 East 42nd Street, Suite 520
New York, NY 10165
*Counsel for Plaintiff*

John E. Gura, Jr.
U.S. Attorney's Office,
86 Chambers Street
New York, NY 10007
*Counsel for Defendant*